## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Litza Serrano-Rivera, Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms, and Explosives, hereinafter referred to as "ATF", being duly sworn, depose and state as follows:

1.  I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510 (7), that is, an officer of the United States empowered by law to conduct investigations and make arrests upon violations of the offenses enumerated in Title 18, United States Code, Section 2516.

2.  I am a Task Force Officer with the ATF in San Juan, Puerto Rico, and have been so for the past seven (7) months. Prior to becoming a Task Force Officer, I worked nine (9) years as an Agent for the San Juan Police Department (SJPD). I am currently assigned to the ATF Firearms Trafficking and Violent Crimes Group. As part of the Firearms Trafficking and Violent Crimes Group, I conduct investigations of violent gangs, firearms and narcotics violations. I have specialized training and/or experience in the area of high-level drug enforcement, street- level drug enforcement, narcotics smuggling and distribution, gangs, undercover operations, surveillance and debriefing informants and suspects.

3.  All reference herein to any experience refers to experience gained through training, conducting firearms and controlled substances investigations, and participating in those investigations with other experienced investigators, as well as conversations with other law enforcement officers.

4.  I have drafted this affidavit for the limited purpose of establishing probable cause that Luis Enrique SERRANO-SANTANA violated 18 U.S.C. § 922(o) – Knowing Possession of a machinegun and 18 U.S.C. § 922(g)(1) – Felon in Possession of a Firearm. Therefore, I have not included all the facts of this investigation

## FACTS SUPPORTING PROBABLE CAUSE

5.  On October 24, 2025, at approximately 2:00 p.m., agents from the Puerto Rico Police Department assigned to the Criminal Intelligence and Arrests Bureau in Caguas set out to

execute two search warrants, one for an apartment located at kilometer 20.9 on Highway 181, Barrio Espino, San Lorenzo, Puerto Rico and the second one for a BMW, Model X3,Blue in Color, bearing license plate IQR190.

6.  According to the PRPD Agents as they were traveling in a convoy toward the location to execute the warrant, the surveillance team stationed at the scene informed them that the suspect related to the warrant, Luis Enrique SERRANO-SANTANA, was leaving the location to be searched, driving the vehicle that was the subject of the second warrant.

7.  PRPD Agents stated that, as they approached the location of the search, they observed SERRANO-SANTANA driving past them in the opposite lane in the BMW, Model X3, Blue in color that they had a search warrant for. The agents stated that they noticed that SERRANO-SANTANA became aware of the police convoy and their presence. SERRANO-SANTANA then reversed the BMW and attempted to flee from the officers. During this attempted escape, SERRANO-SANTANA struck an unmarked police vehicle and then crashed into a utility pole. After the collision, SERRANO-SANTANA's vehicle stalled.

8.  PRPD Agents stated that they surrounded the vehicle, and SERRANO-SANTANA was placed under arrest for striking an official vehicle and attempting leave the scene. PRPD agents also stated that they advised SERRANO-SANTANA of his Miranda Rights and explained to him that they had a search warrant for the BMW, Model X3, Blue in Color, bearing license plate IQR190 and for the apartment located at Highway 181, kilometer 20.9, Barrio Espino, San Lorenzo.

9.  PRPD Agents stated that SERRANO-SANTANA voluntarily stated that there was nothing illegal inside the vehicle and that everything to be found inside the apartment belonged to him, clarifying that the other residents had nothing to do with it. PRPD Agents stated that, incident to his arrest, a Samsung Cellphone, black in color was seized from SERRANO-SANTANA's right pocket.

10. PRPD Agents stated that they executed the search warrant on the BMW, Model X3, Blue in Color, bearing license plate IQR190, at approximately 2:36 p.m., but no contraband was found.  At approximately 2:45 p.m., the agents arrived at the apartment. Before the search began, SERRANO-SANTANA told them that everything was in the bedroom where he slept. PRPD agents deployed a K-9 trained in firearm detection, which alerted and marked the closet inside the bedroom SERRANO-SANTANA identified as his own.

11. According to the PRPD Agents, the closet door was partially open, allowing them to see the black rear portion of an AK-type pistol and two rifle magazines taped together. PRPD Agents stated that before the search continued, SERRANO-SANTANA warned the agents to be cautious because the two pistols and the rifle—referring to the AK-type pistol—were "chipped," meaning they had been modified for automatic fire.

12. PRPD Agents stated that inside SERRANO-SANTANA's bedroom, the agents conducted a search and, on the top shelf of the closet, they seized the following items:

- One (1) AK-style pistol, black in color, with no visible make or serial number, that was modified for fully automatic fire;

- One (1) Glock pistol, Model 39, .45 caliber, serial number BUWG979, with a black grip bearing the word "SUPREME" in white lettering, that was also modified for fully automatic fire;

- One (1) Glock pistol, Model 23, .40 caliber, serial number ZAB658, with a grip bearing the word "SUPREME" in white lettering; that was also modified for fully automatic fire;

- One (1) drum-type pistol magazine for .40 caliber ammunition;

- Three (3) Glock magazines for .45 caliber ammunition;

- Two (2) Glock magazines for .40 caliber ammunition;

- Two (2) sets of rifle magazines taped together;

- Seventy-nine (79) rounds of 5.56 caliber ammunition;

- Forty-eight (48) rounds of .45 caliber ammunition;

- Twenty-five (25) rounds of .40 caliber ammunition;

- Forty-six (46) rounds of 223 caliber ammunition;

- Ninety-seven (97) rounds of 9mm ammunition;

- Two black bulletproof vests;

- One black Ozark-brand backpack;

- One black glove;

- One black ski mask with the Nike logo;

- Three (3) Government Id's bearing the name Luis Enrique SERRANO-SANTANA;

- One (1) Sky devices cellphone; and

- One (1) TCL Flip-phone type cellphone.

13. PRPD Agents stated that over the bed they found a green backpack and inside they recovered a rifle stock and a plastic bag containing firearm components and from the nightstand they recovered a rifle speed loader.

14. The evidence seized is depicted in Attachment A to this Affidavit.

15. Once the search warrant was completed, SERRANO-SANTANA was transported to the Puerto Rico Police Department's Criminal Intelligence and Arrests Bureau to continue the investigation.

16. PRPD Agents stated that during transport, SERRANO-SANTANA, freely and voluntarily, stated: "I did what I did for my sister. I heard my brother-in-law saying he was going to kill me, and I told myself, better him than me."

17. PRPD Agents further stated that upon arrival at the Bureau, they provided SERRANO-SANTANA with a written copy of his Miranda warnings, which were read and explained to him. According to the PRPD Agents, SERRANO-SANTANA stated that he understood his rights and signed the form.

18. ATF assistance was requested in this investigation. ATF Agents arrived at the Criminal Intelligence and Arrests Bureau in Caguas and assisted in the investigation.

19. ATF read SERRANO-SANTANA his Miranda's Rights, which he understood and signed, stating he was willing to speak with authorities without having his lawyer present.

20. During the interview by ATF agents, SERRANO-SANTANA stated that the police had arrested him "for the Moncho thing." SERRANO-SANTANA stated that he killed Moncho because of his sister — that Moncho had abused her, mistreated her, and had shown disrespect to SERRANO-SANTANA's father. SERRANO-SANTANA stated that he heard Moncho say to his father, "mamabicho te voy a coger a tu hijo y te lo voy a matar" (English translation: "motherfucker, I'm going to get your son and I'm going to kill him"). SERRANO-SANTANA stated that when he heard that threat, he removed the children from the car, went upstairs, and killed Moncho.

21. SERRANO-SANTANA further stated to ATF agents that he killed Moncho with a .40 caliber, Model 22 pistol, and when asked, clarified that the weapon he used was not any of the firearms seized by police during the warrant execution that day.

22. SERRANO-SANTANA stated that the police went to the house where he had been staying and that they had a search warrant for that residence. SERRANO-SANTANA stated ATF Agents that he had purchased the firearms seized by the police recently. SERRANO-SANTANA also stated that the police had seized a rifle that was "fulete" (i.e., altered to fire automatically), as well as a Glock 23 and a Glock 30, which he described as also being "fulete" (i.e., altered to fire automatically).

23. SERRANO-SANTANA further stated that, as the police were preparing to seize the firearms, he warned them that the weapons were "fulete" — meaning they were modified to fire automatically — and told them to be careful so that no one would be harmed. SERRANO-SANTANA stated that the police seized everything from his bedroom and that his partner had nothing to do with the items seized.

24. SERRANO-SANTANA stated that he paid $1,500 for the Glock 23, $1,200 for the Glock 30, and $1,400 for the rifle. SERRANO-SANTANA stated that each firearm was already modified for automatic fire when he purchased it. SERRRANO-SANTANA also acknowledged that officers seized bulletproof vests, firearm parts, magazines, and ammunition. SERRANO-SANTANA further stated that he bought the weapons because people were looking to kill him and that he had previously been shot at. SERRANO-SANTANA stated that, at the time agents arrived, he had left to purchase something at a store; while driving he saw a white truck and believed they were there to kill him. SERRANO-SANTANA stated that he attempted to flee by reversing the vehicle and struck another car, at which point he was arrested by police officers.

SERRANO-SANTANA stated that he was sentenced to fourteen years (14) in prison in relation to a shootout with police agents and he served approximately 9 years due to good time credits.

25. A preliminary field test examinations of the Glock pistol, model 23, caliber .40, serial number ZAB658, the Glock pistol, model 30, caliber .45, serial number BUWG979, and the AK-style pistol, black in color, with no visible make or serial number, without ammunitions, indicated that the three (3) firearms can fire more than a single round of ammunition per single function of the trigger, which would meet the legal definition of a machine gun. Based on my training, knowledge and experience with ATF, the device on the firearms was not installed by the manufacturer and was placed on the firearm with the sole purpose of illegally modifying it to fire fully automatic, meaning that is capable of expelling more than one (1) projectile from one single pull of the trigger.

26. A search of law enforcement and court databases revealed that SERRANO-SANTANA was charged and convicted of multiple felony offenses punishable by a year or more in prison.

27. The investigation further revealed that no firearms or ammunition, including the type described above, are manufactured in Puerto Rico and therefore, the investigation concluded that the aforementioned firearm had been shipped or transported in interstate or foreign commerce.

## **CONCLUSION**

28. Based on the above facts, I have probable cause to believe that Luis Enrique SERRANO-SANTANA violated federal firearm laws. Specifically, he has violated Title 18, <u>United States Code</u>, § 922(g)(1) and Title 18, <u>United States Code</u>, § 922(o).

Litza Serrano-Rivera
ATF Task Force Officer

Sworn pursuant to FRCP 4.1 at ____1:26PM____ by telephone, this ⟋ day of October 25, 2025.

Honorable Marshal D. Morgan
United States Magistrate Judge

**ATTACHMENT A**

